**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 2:11-cr-00045-4 |
| | ) Civil Action No. 2:15-cv-00600 |
| KEENAN BLACK, | ) |
| | ) |
| Defendant. | ) |

## OPINION

**Mark R. Hornak, United States District Judge**

Petitioner Keenan Black was sentenced to 300 months' imprisonment for drug- and firearm-related offenses, a sentence which included a then-mandatory 180-month sentence for a felon-in-possession charge, enhanced by the Armed Career Criminal Act. Before the Court is Black's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Because Black's aggregate sentence reflected an Armed Career Criminal enhancement that is now unconstitutional in light of *Johnson v. United States*, he is entitled to vacatur on Count 14. And because Count 14 formed part of a "sentencing package," that vacatur unbundles the sentencing package, and the Court will order a full resentencing hearing.

## I. BACKGROUND

In 2012, after a bench trial, this Court[1] found petitioner Keenan Black guilty of drug- and firearm-related offenses at Counts 12, 13, and 14, of the Superseding Indictment. (Presentence Investigation Report, ECF No. 1208 ("PSR"), ¶ 3.) The United States Probation Office filed a PSR reflecting that Defendant had a criminal history including four prior Delaware state felony convictions: (1) Possession with Intent to Deliver a Controlled Substance (PSR ¶ 43); (2)

---

[1] Judge Arthur J. Schwab was assigned to this case until he recused, pursuant to 28 U.S.C. § 455(a) on June 14, 2016, (*see* Order of Recusal, ECF No. 1509). Judge Mark R. Hornak was then randomly assigned to the case.

Possession of a Firearm During the Commission of a Felony (PSR ¶ 45); (3) Conspiracy in the Second Degree (PSR ¶ 47); and (4) Trafficking in Cocaine (PSR ¶ 48).

The Probation Office calculated Black's total offense level to be 34, and his criminal history category to be VI, which resulted in an advisory Guideline range of 360 months to life imprisonment. (PSR ¶ 38.) This calculation was based, in part, on two enhancements. First, the Probation Office concluded that Black was a Career Offender under U.S.S.G. § 4B1.1. (PSR ¶ 33.) Second, the Office determined that because Count 14 was a conviction under 18 U.S.C. § 922(g)(1), and he had at least three prior convictions for a violent felony or serious drug offense under the law as it stood in 2013, Black was an Armed Career Criminal within the meaning of U.S.S.G. § 4B1.4. (PSR ¶ 34.) Neither Black nor the Government objected to the PSR. (Addendum to PSR, ECF No. 1245.)

On May 7, 2013, the Court sentenced Black to sixty (60) months' imprisonment at Count 12, sixty (60) months' imprisonment at Count 13, and 180 months' imprisonment at Count 14, with each term to be served consecutively to one another, for a total of 300 months' imprisonment. (Judgment, ECF No. 1298.) The sentence at Count 14 reflected a mandatory fifteen-year term under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *United States v. Black*, 558 F. App'x 249, 249 (3d Cir. 2014). Black appealed, and a panel of the Third Circuit affirmed. *Id.*

Black then filed a Motion to Vacate under 28 U.S.C. § 2255. (Motion to Vacate, ECF No. 1427.) There, among other things, he alleged that his trial counsel ineffectively failed to object to his ACC classification. The Court concluded that he had not demonstrated that Possession of a Firearm During the Commission of a Felony was not an ACCA predicate offense, and that his "applicable advisory guideline range and resultant sentence was driven by his status as a career

2

offender pursuant to 18 U.S.C. § 924(c) and the underlying federal offenses, not his designation as an Armed Career Criminal." (Memorandum Order, ECF No. 1444 ("First § 2255 Order"), at 3–4.) Accordingly, the Court held, Defense Counsel's representation did not result in prejudice, even if it was ineffective. (*Id.* at 4.)

Then, in 2015, the Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015), which declared the ACCA's residual clause unconstitutional. Mr. Black then filed a second petition for collateral relief in June of 2016.[2] (Motion to Vacate, ECF No. 1507 ("Second Motion to Vacate").) A Third Circuit panel authorized Mr. Black to file a second § 2255 motion to determine *Johnson*'s effect on his sentence. (Order, ECF No. 1517.) Then, in 2017, the Supreme Court decided *Beckles v. United States*, 137 S. Ct. 886 (2017), which declared that the identical residual clause in the United States Sentencing Guidelines was *not* subject to a void-for-vagueness constitutional challenge. The Sentencing Commission revised the Guidelines in 2016 to remove the residual clause from the Career Offender Guideline, § 4B1.2. *See* United States Sentencing Commission, *Guidelines Manual* (2016).

The Court has reviewed the aforementioned party submissions and the record before the sentencing Court, as well as Mr. Black's Brief in Support of Motion to Vacate, ECF No. 1567 ("Pet'r Br."), the Government's Response, ECF No. 1584 ("Gov't Br."), Mr. Black's Reply, ECF No. 1590 ("Pet'r Reply"), Mr. Black's Notice of Supplemental Authority, ECF No. 1592 ("Pet'r Supp."), the Government's Response Re: 1592 Supplement, ECF No. 1599 ("Gov't Response to Pet'r Supp."), Mr. Black's Supplement Concerning *Hester*, ECF No. 1627 ("Pet'r Br. Re:

---

[2] On August 5, 2015, then-Chief Judge Joy Flowers Conti appointed the Federal Public Defender for the limited purpose of representing any indigent defendant sentenced in the Western District of Pennsylvania who may be eligible for collateral relief based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See In re: Petitions for Retroactive Application of* Johnson v. United States, *135 S. Ct. 2551 (2015)*, Misc. No. 15-593 (W.D. Pa. Aug. 5, 2015). Consistent with that appointment, the Federal Public Defender filed the petition for collateral relief here at ECF No. 1507.

3

*Hester*"), and the Government's Supplement Concerning *Hester*, ECF No. 1628 ("Gov't Br. Re: *Hester*"). The Court held Oral Argument on December 4, 2018. (Minute Entry, ECF No. 1624.) The matter is now ripe for disposition.

## II. ANALYSIS

Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion to vacate her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is available only when 'the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). Some federal sentencing errors, such as a "formal violation of Rule 11" of the Federal Rules of Criminal Procedure, will not be cognizable. *United States v. Timmreck*, 441 U.S. 780, 782 (1979). However, an erroneous sentence, imposed in violation of the Constitution, or in excess of the statutory maximum, will be cognizable. *See, e.g.*, *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Shipp*, 589 F.3d 1084, 1091 (10th Cir. 2009) (stating that a defendant who "does not constitute an armed career criminal . . . [has] received a punishment that the law cannot impose on him").

Mr. Black now contends that his sentence is illegal because he remains neither an Armed Career Criminal nor a Career Offender under *Johnson* and the current Guidelines. (Pet'r Br., at 2–3.) The Government does not disagree that *Johnson* renders Mr. Black's sentence at Count 14 invalid, but urges that the appropriate relief (if any is to be granted at all) is not resentencing but rather the entry of an amended sentencing judgment to re-apportion the 300-month sentence

4

between Counts 12, 13, and 14 while reducing the sentence at Count 14 to no more than the ACCA statutory maximum of 120 months. (Gov't Br., at 4.)

## a. Gatekeeping Requirements

On a second or successive § 2255 motion, even when authorized by the Court of Appeals, this Court must first consider whether the motion relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2); *accord* 28 U.S.C. § 2244(b)(2)(A). For such motions, "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663, (2001). The Supreme Court in *Welch v. United States* declared *Johnson* retroactive to cases on collateral review, 136 S. Ct. 1257, 1268 (2016), and therefore Mr. Black's motion based on *Johnson*, contending that he was unlawfully sentenced under the now-unconstitutional residual clause, satisfies § 2255's gatekeeping provision. *See United States v. Peppers*, 899 F.3d 211, 220 (3d Cir. 2018).

## b. ACCA Designation

Mr. Black argues that his ACCA-enhanced sentence at Count 14 now exceeds the statutory maximum of 120 months because at least two of his convictions found to be qualifying ACCA predicate offenses no longer qualify as convictions for a "violent felony" or a "serious drug offense" in light of *Johnson*. (Pet'r Br., at 4.) The Government does not contest this argument, though it does not expressly concede the point. The convictions identified as ACCA predicates in the PSR were (1) a 2000 Delaware conviction for Possession with Intent to Deliver a Controlled Substance, (2) a 1999 Delaware conviction for Possession of a Firearm During the Commission of a Felony, (3) a 2005 Delaware conviction for Second-Degree Conspiracy to

5

commit assault, and (4) a 2005 Delaware conviction for Trafficking in Cocaine. (PSR ¶¶ 34, 43, 45, 47 & 48.)

On direct appeal, the Government conceded that Mr. Black's Delaware conviction for trafficking is "neither a violent felony nor a serious drug offense" and therefore does not qualify as an ACCA predicate. *Black*, 558 F. App'x at 250 & n.3. Mr. Black contends that his conviction for Second-Degree Conspiracy is not an ACCA predicate either, and therefore he has at maximum two qualifying convictions post-*Johnson*, and thus the ACC designation no longer applies. (Second Motion to Vacate, at 4.) The Court concludes that Mr. Black's Delaware Conspiracy conviction does not satisfy the ACCA's force clause or its enumerated offenses clause, and it is therefore not a valid ACCA predicate.

Because *Johnson* invalidated the ACCA's residual clause, a prior conviction can only qualify as a "violent felony" if it contains an element of force or matches the elements of an enumerated offense. 18 U.S.C. § 924(e)(2)(B). When considering whether a prior conviction qualifies as a violent felony, the Court begins with the "categorical approach," which compares the elements of the crime of conviction to the elements of a generic version of the crime. *United States v. Mayo*, 901 F.3d 218, 224–25 (3d Cir. 2018). Because conspiracy is not one of the ACCA's enumerated offenses, it must meet the requirements of the force clause to qualify as a predicate offense. Thus, the Court must compare Delaware's conspiracy statute with the definition of "violent felony" set forth in the ACCA's force clause.

In 2005, when Mr. Black was convicted of second-degree conspiracy, the Delaware statute applied when a person, "when intending to promote or facilitate the commission of a felony,"

6

> (1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or
>
> (2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and the person or another person with whom the person conspired commits an overt act in pursuance of the conspiracy.

11 Del. Code Ann. tit. 11, § 512 (2004 ed.). A prior conviction will qualify under the force clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B). Force here means "violent force," "capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 138–40 (2010). Under the categorical approach, the Court looks to the text of the statute and may also consider Delaware caselaw. *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).

Mr. Black advances three reasons why the Delaware conspiracy statute's elements do not meet the force clause's requirements: (1) the jury does not have to be unanimous on whether the defendant or a co-conspirator committed an overt act; (2) the jury does not have to be unanimous on the overt act itself; and (3) the statute does not require that the overt act entail the use of force. The Government does not contest these arguments.

As a preliminary matter, the Court observes that, facially, none of the elements of the Delaware conspiracy crime requires the "use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i). Delaware Courts have held that "all that is necessary" for a conspiracy is that (1) "an agreement was made" between the defendant and a co-conspirator and (2) that "either Defendant or [a co-conspirator] took an overt act." *State v. Lemons*, 2010 WL 1175200, at *4 (Del. Super. Ct. Mar. 29, 2010), *aff'd*, 32 A.3d 358 (Del. 2011); *see State v. Pottinger*, No. Cr. A. IN93-02-1994, 1994 WL 682532, at *1 (Del. Super. Ct. Nov. 3, 1994), *aff'd sub nom. Wanamaker v. State*, 659 A.2d 229 (Del. 1995).

What is more, the defendant need not personally commit an overt act in furtherance of the conspiracy. *Id.* The statute therefore does not require that *the defendant* use, threaten, or attempt the use of force. Finally, the overt act itself need not entail the use, attempted use, or threatened use of violent physical force against another. *See Younger v. State*, 979 A.2d 1112 (Table) (Del. 2009) ("An overt act in support of a charge of conspiracy need not be a completed crime or even an act that would amount to a substantial step in furtherance of the underlying felony; rather, it 'may be any act in pursuance of or tending toward the accomplishment of the conspiratorial purpose.'" (quoting Commentary, Del. Crim. Code §§ 511 & 512 (1972 ed.))). The statute's elements therefore do not satisfy the force clause.

Nor does the statute's text permit the Court to use the "modified categorical approach" and review *Shepard* documents to determine whether Black's conviction qualifies under the ACCA. A Court may only consider *Shepard* documents when the statutory crime is divisible, listing multiple alternative elements, such that the statute effectively creates several different crimes. *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013). The Court may not consult such documents under the modified categorical approach when the statute defines the crime in terms of alternative means of committing the same crime. *Mathis*, 126 S. Ct. at 2256. To determine whether listed alternatives are elements or means, the Court must consider the statute's text, and whether "the statutory alternatives carry different punishments" or "identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id.* at 2249. The Court may also consider state court decisions. *Id.*

Here, to convict for second-degree conspiracy, the prosecution must prove beyond a reasonable doubt that the defendant and a co-conspirator agree to commit a felony, and that either the defendant or a co-conspirator commits an overt act. *Lemons*, 2010 WL 1175200, at *2.

These are the crime's elements. The jury does not have to agree on the overt act committed in order to find the defendant guilty. *Dougherty v. State*, 21 A.3d 1, 7 (Del. 2011) (declining to impose a unanimity requirement for conspiracy conviction). Therefore, the potential set of overt acts sufficient to commit second-degree conspiracy does not constitute a set of alternative *elements*, but rather alternative means of committing the same crime. *See Mathis*, 136 S. Ct. at 2256. Because the overt act's specifics "need neither be found by a jury nor admitted by a defendant," the facts related to the overt act "cares not a whit about them," *id.* at 2248. The modified categorical approach does not apply here.

A Delaware second-degree conspiracy conviction does not have force as an element. Therefore, Mr. Black's conviction of that crime does not necessarily establish a violent felony, and is not a valid ACCA predicate. It follows that, because the Third Circuit determined on appeal that Mr. Black's trafficking conviction was also not a predicate offense, Black could have only received the ACCA designation under the now-unconstitutional residual clause. His sentence at Count 14 is therefore legally erroneous.

### c. **Prejudice**

Having determined that Black was sentenced at Count 14 pursuant to the ACCA's now-unconstitutional residual clause, the Court "must resolve whether that error was harmless." *United States v. Peppers*, 899 F.3d 211, 236 (3d Cir. 2018). This requirement is sometimes referred to as "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), *abrogated in part on other grounds by Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam). The Government contends that Black's erroneous ACC designation did not prejudice him, pointing to the sentencing Court's statement in Black's first § 2255 proceeding that his Career Offender designation actually "drove" the sentence. For his part, Mr. Black urges that his ACCA sentence

9

prejudiced him because without it, he could today be resentenced under Guidelines that do not contain a residual clause for the Career Offender Guideline, and therefore his Guideline range would be significantly lower.

At the outset, it strikes the Court that Mr. Black's prejudice argument presents a chicken-egg problem. "[H]armless-error review for a sentencing error requires a determination of whether the error 'would have made no difference in the sentence.'" *United States v. Lewis*, 802 F.3d 449, 455 (3d Cir. 2015) (en banc) (quoting *Parker v. Dugger*, 498 U.S. 308, 319 (1991)). To decide whether the ACCA sentence "made no difference," Mr. Black urges the Court to consider his Career Offender sentence, imposed at Count 13. He argues that under current law, he would no longer be designated a Career Offender, and therefore the continued viability of his ACCA sentence prejudices him. But to consider any arguments related to Black's status as a Career Offender, the Court would have to first determine that his § 2255 petition had merit, that is, that the ACCA sentence prejudiced him. However, the Court need not decide "which came first," that is, whether the Career Offender designation by itself opens the door to broader consideration of the sentence. The sentencing Court's specific imposition of 180 months at Count 14 is, post-*Johnson*, error enough to review the entire sentence.

In support of its argument that the ACCA-enhanced sentence was not prejudicial, the Government directs the Court's attention to Judge Schwab's pre-*Johnson* statement in denying Black's first § 2255 motion, that "Defendant's applicable advisory guideline range and resultant sentence was driven by his status as a career offender . . . , not his designation as an Armed Career Criminal." (First § 2255 Order, at 3–4.)

The Court will decline to treat Judge Schwab's statements as barring Mr. Black's claims. This does not mean, as the Government insists, that the Court makes "an implied finding that

Judge Schwab was wrong," (Gov't Br. Re: *Hester*, at 8). Rather, the Court recognizes that Judge Schwab made such a statement without the important context that *Johnson* now provides—that the ACCA enhancement was based on an unconstitutional provision of law.

Additionally, Judge Schwab made that statement in the context of deciding whether Mr. Black's ineffective-assistance-of-counsel claim was viable. Mr. Black had argued that counsel ineffectively failed to object to his classification as an Armed Career Criminal. (First § 2255 Order, at 3.) First, the Court concluded (again, pre-*Johnson*) that Black did not carry his burden to show that he had a meritorious objection to his ACC classification and therefore his ineffective-assistance claim failed. (*Id.*) Second, the Court noted that "regardless of whether [representation] was arguably ineffective," Black could not show prejudice because his career offender status drove his sentence. (*Id.* at 3–4.)

A more complete view of Judge Schwab's Order denying Mr. Black's first § 2255 motion therefore reveals that the sentencing Court was providing an alternative, additional ground for finding that Black's representation was not ineffective. To give such a statement talismanic treatment over Black's second § 2255 claim, when the legal landscape surrounding the ACCA has changed in ways the sentencing Court could not have anticipated, would call into question the fundamental fairness and integrity of these proceedings, *see United States v. Hester*, 910 F.3d 78, 91 (3d Cir. 2018).

Having determined to not give Judge Schwab's pre-*Johnson* statement preclusive effect on Mr. Black's claims, the Court turns to whether, as the Government asserts, the erroneous ACC designation was nonetheless harmless because the sentencing Court could have imposed the same 300-month sentence, just apportioned differently. The Court concludes that merely re-apportioning the sentence to correct the error at Count 14, and thereby necessarily *increasing* the

sentence on one of the other counts of conviction—without a resentencing hearing—would clash with principles of fairness and due process central to the sentencing process. *Cf. Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018) ("[W]hat reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" (quoting *United States v. Sabillon-Umana*, 772 F.3d 1328, 1333–34 (10th Cir. 2014) (Gorsuch, J.))).

The Third Circuit has also recently required resentencing to correct a procedural sentencing error, when the district court first applied an improper four-point Guidelines enhancement, but then, doubting whether that enhancement should truly apply, varied downward four levels "in reference to '[i]f that four-point guideline adjustment had not applied.'" *Hester*, 910 F.3d at 91 (quoting record on appeal). The district court effectively anticipated its own sentencing error and imposed the sentence as if the enhancement did not apply in the first place. *See id.* The Third Circuit nonetheless vacated and remanded for resentencing, reasoning that, even though the district court intended to "rectify a likely Guidelines miscalculation when imposing the sentence," "we will not rely on conjecture to conclude that the District Court necessarily would have imposed the same sentence absent the error." *Id.*

The *Hester* Court specifically rejected the Government's contention that resentencing would be a "pointless formality," and stressed that correcting such errors ensures fairness and integrity, and "prevent[s] the erosion of public confidence in our judicial system." *Id.* at 91 (citing *Rosales-Mireles*, 138 S. Ct. at 1908).

The Government argues that *Hester* is inapposite because its posture (direct review) differs from the posture here (collateral review). (Gov't Br. Re: *Hester*, at 1.) The Government is

12

correct that collateral challenges face more stringent review than direct appeals of sentences. *See United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014). But the Government's logic elides that Mr. Black's ACC sentence at Count 14 is unconstitutional under *Johnson*. The interests in finality in sentencing must be at a lower ebb when one of a group of sanctions offends the Constitution. Collateral review "does not encompass all claimed errors in conviction and sentencing," *Bousley v. United States*, 523 U.S. 614, 621 (1998), but it does encompass an error of constitutional magnitude.

*Hester*'s logic informs the analysis here. The Court cannot be sure that the original sentencing Court would have imposed the same sentence at Count 14 absent the ACCA enhancement.[3] Although the Guidelines range, and not any statutory minimum, is the "lodestar" for sentencing, *Molina-Martinez*, 136 S. Ct. at 1345, it cannot be ignored that the sentencing Court was bound to apply a 180-month statutory minimum at Count 14. Mr. Black was sentenced to 60 months each at Counts 12 and 13, and an additional 180 months at Count 14, all to be served consecutively to one another.

It may well be that the statutory minimum 180 months at Count 14 did not bear on the Court's overall calculation, and that the Court, seeking to impose 300 months' imprisonment, merely apportioned a sentence driven by career offender considerations the way it did to reflect that, at the time, the law required a 180-month sentence at Count 14. Indeed, today the sentencing Court might have made the same choice as to the overall consolidated sentence length. But at the time, the law compelled the sentencing Court to sentence Mr. Black to no fewer than 180 months at Count 14, to be served consecutively, based on his ACC designation. What is more, the sentencing Court saw fit at the time to sentence Black to only 60 months at

---

[3] And given the sentencing process and reasoning applied by the district court in *Hester*, it is not at all apparent to this Court that, post-*Hester*, a "it would have come out the same" analysis retains any vitality.

Count 12, which carried a Guidelines Career Offender enhancement, despite its later statement that the Career Offender designation drove the sentence. The Court will not rely on post-hoc conjecture to conclude that the erroneous ACC enhancement had *no* effect on the sentencing Court's intent. Nor will the Court ignore that the sentence at Count 14 was imposed under a now-unconstitutional provision of law.

The Government also insists that any ACCA error did not prejudice Mr. Black because his overall sentence could have been fashioned differently, that is, apportioned differently among Counts 12, 13, and 14. It cites *United States v. Goode*, in which a panel of the Third Circuit affirmed the defendant's sentence even though the district court imposed statutory minimum sentences for some of the defendant's convictions that should have received no sentence at all under double jeopardy principles. 2018 WL 4566267, at *2 (3d Cir. Sept 24, 2018).

The panel in *Goode* explained that the defendant "concedes that, even if he could not be sentenced to three consecutive terms on Counts 8, 9, and 10 involving Citizens Bank, he still could have received three consecutive sentences on counts that span three different banks. Thus, even under [his] line of reasoning, his claim still fails because he could have received the same sentence, albeit fashioned in a different way." *Id.* at *2. That is, because the petitioner in *Goode* was convicted of, *inter alia*, twenty-five (25) counts of aggravated identity theft associated with three different banks, his sentence (which included three consecutive terms for three of the aggravated identity theft counts) could have been fashioned differently and was therefore not erroneous.

Here, the Government reasons that because the sentencing Court could have (post-*Johnson*) apportioned the sentence differently, for example, by sentencing Mr. Black to 240 months at Count 12, to be served concurrently with the statutory maximum 120 months at Count

14

14, and a consecutive 60 months at Count 13, Mr. Black cannot have been prejudiced by the sentence at Count 14. The Government insists that, based on *Goode*'s logic, "there was, at most, an apportionment error between the multiple counts of conviction." (Gov't Br. Re: *Hester*, at 6.)

But there is more than a mere apportionment error here. Absent the ACCA enhancement, the sentence at Count 14 is now "in excess of the maximum allowed by law," 28 U.S.C. § 2255(a). And under the principles vigorously reaffirmed in *Hester*, this Court cannot be sure that the statutory mandatory minimum at the time did not influence the overall sentence. *See United States v. Vasquez-Lebron*, 582 F.3d 443, 447 (3d Cir. 2009) ("It is difficult to conclude that a District Court *would have* reached the same result in a given case merely because it *could have* reasonably imposed the same sentence on a defendant."). Mr. Black has therefore shown that the Court cannot be certain the ACCA sentence "would have made no difference." He has established prejudice, and his claim is cognizable.

### d. **Appropriate Form of Collateral Relief**

Section 2255 provides a "flexible remedy." *Andrews v. United States*, 373 U.S. 334, 339 (1963). In the face of a meritorious § 2255 claim, a district court has the discretion to choose between discharging the petitioner, resentencing the petitioner, correcting the petitioner's sentence, or granting the petitioner a new trial. 28 U.S.C. § 2255(b). When only the sentence, but not the conviction, suffers legal infirmity, the "discharging" or "granting a new trial" options are off the table. A defective sentence may only be corrected by resentencing or correcting the sentence. *United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000).

The Government urges that, to the extent that Mr. Black is entitled to § 2255 relief, the Court should at most amend the sentencing judgment to re-apportion the 300-month sentence between Counts 12–14 by reducing the sentence at Count 14 to no more than the non-ACC

15

statutory maximum of 120 months. (Gov't Br., at 4.) Mr. Black, on the other hand, argues that if

the Court vacates his ACCA sentence, it must also resentence him on all counts of conviction.

(Pet'r Br., at 20.)

The Third Circuit has held that the "sentencing package doctrine" permits district courts

to recalculate the aggregate sentence when a petitioner's § 2255 motion challenges one of

multiple, interdependent convictions. *United States v. Davis*, 112 F.3d 118, 120–21 (3d Cir.

1997).

> The sentencing package doctrine counsels that:
>
> [W]hen a defendant is found guilty on a multicount indictment, there is a strong
> likelihood that the district court will craft a disposition in which the sentences on
> the various counts form part of an overall plan. When a conviction on one or more
> of the component counts is vacated, common sense dictates that the judge should
> be free to review the efficacy of what remains in light of the original plan, and to
> reconstruct the sentencing architecture upon remand, within the applicable
> constitutional and statutory limits, if that appears necessary in order to ensure that
> the punishment still fits both crime and criminal.

*Id.* at 122 (quoting *United States v. Pimenta-Redondo*, 874 F.2d 9, 14 (1st Cir. 1989).

In *Davis*, the Court noted that "[t]he plain language of § 2255 does not support

[petitioner's] argument that in all circumstances, the court is limited in its resentencing options to

only the count challenged in the motion." *Id.* at 121. Further, "the plain language does not restrict

the word 'sentence' and authorizes the court to act 'as may appear appropriate.' Thus, it confers

upon the district court broad and flexible power in its actions following a successful § 2255

motion." *Id.* (citation omitted) (quoting *United States v. Hillary*, 106 F.3d 1170, 1171–72 (4th

Cir. 1997)).

The Third Circuit so far has applied the sentencing package doctrine only where a

*conviction*, not only a sentence, has been vacated. *See United States v. Miller*, 594 F.3d 172,

181–82 (3d Cir. 2010); *Davis*, 112 F.3d at 122. Panels of the Third Circuit, however, have

applied the doctrine to vacated sentences. *United States v. Fumo*, 513 F. App'x 215 (3d Cir. 2013); *United States v. Brown*, 385 F. App'x 147 (3d Cir. 2010). Other courts have also applied the doctrine to cases in which a sentence, and not a conviction, was vacated. *See, e.g.*, *United States v. Catrell*, 774 F.3d 666, 670 (10th Cir. 2014).

Furthermore, § 2255's text does not suggest that the sentencing package doctrine should apply only to vacated convictions. Rather, the statute entitles "[a] prisoner in custody under [an illegal] sentence" to "move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).

The Court sees no principled reason why the sentencing package doctrine should not apply in cases where, as here, the Court of Appeals has affirmed a prisoner's conviction, and on a second § 2255 petition, a portion of his sentence is found unconstitutional. *Johnson* has had profound effects on federal sentencing law, one of which is providing new grounds for vacating a sentence even in the absence of a computational error or a defective conviction.

The Government is correct that under *Beckles*, a challenge to the residual clause of the advisory Career Offender Guideline is not cognizable grounds to grant a § 2255 petition. *See Beckles v. United States*, 137 S. Ct. 886, 892 (2017). But *Beckles* does not eliminate this Court's discretion, when considering the relief available to a petitioner who successfully challenges an improper ACC designation, to consider the efficacy of Mr. Black's sentence to ensure it "still fits both crime and criminal." *Pimenta-Redondo*, 874 F.2d at 14.

A defendant's sentences merit review under the sentencing package doctrine if the sentencing Court viewed the original sentence as a package. *United States v. Fowler*, 749 F.3d 1010, 1017 (11th Cir. 2014). When one such component is set aside, or "unbundled," the Court has the authority to recalculate the sentence. *Id.*; *see United States v. Townsend*, 178 F.3d 558,

17

567 (D.C. Cir. 1999) ("[W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan," and if some counts are vacated, "the judge should be free to review the efficacy of what remains in light of the original plan.").

The Government contends that Mr. Black's ACC-enhanced sentence or conviction at Count 14 is not an interdependent count because, it argues, the Guideline range flowed from the conviction at Count 13. (Gov't Br., at 4.) Its authority for this proposition, however, is not on all fours. *See United States v. Zareck*, 662 F. App'x 110, 113 (3d Cir. 2016) (noting that the defendant "explicitly acknowledge[d] that his initial sentence did not involve interdependent counts"); *United States v. Ciavarella*, 716 F.3d 705, 735 (3d Cir. 2013) (holding that the vacated count did not affect the defendant's "total offense level, Guideline range, or *sentence*" (emphasis added)). Given that the sentencing Court here apportioned all of the sentences to run consecutively (even though not required by statute), and imposed the statutorily mandated (but now legally excessive) 180-month sentence at Count 14, and given *Hester*'s admonitions regarding the avoidance of conjecture, the Court cannot presume that the sentence at Count 14 did not affect the overall sentencing package.

The Court concludes that the sentencing Court considered the sentences at Counts 12, 13, and 14 to be part of the same sentencing package when it imposed sentence. The sentencing Court determined that Counts 12 and 14 involved "substantially the same harm" and should therefore be grouped under U.S.S.G. § 3D1.2. (PSR ¶ 24.) In the resentencing-on-remand context, the Third Circuit has held that "[c]ounts that were grouped pursuant to the Sentencing Guidelines at the original sentencing are interdependent, such that the vacation of one of the

grouped counts requires a de novo sentencing." *United States v. Diaz*, 639 F.3d 616, 619 (3d Cir. 2011) (quoting *Miller*, 594 F.3d at 182).

The Government also argues that resentencing, though within the Court's discretion, is nonetheless inappropriate because "the goal of § 2255 review is to place the defendant in exactly the same position he would have been had there been no error in the first instance." (Gov't Br, 1584, at 4 (quoting *United States v. Hadden*, 475 F.3d 652, 665 (4th Cir. 2007) (citation omitted)).) Section 2255's aims therefore, according to the Government, do not support placing a petitioner in a "better" position than if there were no error. (*Id.*)

The Government's cited cases, however, illustrate that Courts have been concerned primarily with whether 2255 relief will place a petitioner in a *worse* petition. In *Hadden*, for instance, in the context of the quote above, the Fourth Circuit pointed out that "[w]ere we to hold that a successful § 2255 petitioner who received a corrected sentence or a resentencing had to obtain a COA to appeal matters relating to the propriety of his new sentence, he would be placed in a *worse* situation than he would have been had there been no error in the first instance." *Hadden*, 475 F.3d at 665; *see United States v. Silvers*, 90 F.3d 95, 99 (concluding that an appellate court may impose a conviction for a lesser-included offense when vacating a greater erroneous conviction, and this is not double punishment because the defendant is "placed in exactly the same position in which he would have been had there been no error in the first instance").

In a non-precedential opinion, however, a panel of the Fourth Circuit rejected a petitioner's request to be sentenced under the current Career Offender Guideline, in part because he sought "to be placed in a *better* position," in contravention of what the panel interpreted to be § 2255's goals as stated in *Hadden*. *United States v. Davis*, 708 F. App'x 767, 770 (4th Cir.

19

2017). Seizing on this, the Government avers that any relief that would improve Mr. Black's position vis-à-vis sentencing runs counter to § 2255's aims.

As a preliminary matter, in *Davis*, the district court imposed concurrent sentences for the ACCA and Guideline Career Offender counts of conviction. *Id.* at 768. But more fundamentally, this Court declines to accept the Government's extrapolation from *Davis* that a bedrock principle of § 2255 law is that granting resentencing relief somehow "rewards" a successful petition and is therefore improper. Section 2255 relief is certainly a floor—a Court may not place the petitioner in a worse position than she was before. But it is not also a ceiling. By its terms, § 2255 corrects errors with consequences of constitutional and statutory proportions. In some instances, correcting a sentence imposed in violation of the Constitution or laws permits resentencing on terms that differ from those of the original sentencing, namely *because* the law of the land has changed. To automate re-apportionment and foreclose resentencing in such instances would contravene § 2255's purpose of correcting legally erroneous sentences. *Cf. Gomori v. Arnold*, 533 F.2d 871, 874 (3d Cir. 1976).

Nor does *Goode* mandate this Court to re-apportion Mr. Black's sentence and go no further. As explained above, there, a panel of the Third Circuit affirmed the defendant's three consecutive sentences for identity theft convictions stemming from his criminal activity at Citizens Bank. *Goode*, 2018 WL 4566267, at *1–2. Here, while the Court *could* re-apportion Mr. Black's sentences to preserve the original 300-month sentence, *Goode*'s reasoning does not require re-apportionment in lieu of resentencing. This conclusion reflects the flexibility § 2255 affords this Court in fashioning a remedy. *See Davis*, 112 F.3d at 121.

## III. **CONCLUSION**

For the foregoing reasons, Mr. Black's Motion to Vacate, at ECF No. 1507, will be

GRANTED. An appropriate Order will follow.

Mark R. Hornak
United States District Judge

Dated: January 16, 2019
cc:    All counsel of record